UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL D. PORTIS,                                                                                      PETITIONER

V.                                                      CIVIL ACTION NO. 3:20-CV-00316-TSL-RPM

BILLY SOLLIE,                                                                                           RESPONDENT

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On May 4, 2020, petitioner Michael D. Portis ("Portis" or "petitioner"), proceeding *pro se*, filed a writ for *habeas corpus* seeking immediate release from pretrial detention pursuant to 28 U.S.C. § 2241 ("Section 2241"). Doc. [1]. On August 5, 2020, respondent Billy Sollie ("respondent") filed the present motion to dismiss. *See* Doc. [9]. This motion is unopposed.

### II.   FACTS

On December 6, 2017, the petitioner was arrested in connection with the death of his then-partner Miranda Allen Portis ("decedent"). Doc. [1], at 1. On December 7, 2017, he made an initial appearance before Mississippi Municipal Court Judge Robert Jones ("Judge Jones"), who conducted a preliminary hearing that same day. Doc. [9], Ex. A. Following the preliminary hearing, Judge Jones ruled that: (i) probable cause existed to bind the petitioner over to the Lauderdale County grand jury; (ii) the petitioner's bond was set at $500,000.00;[1] and (iii) the

---

[1] On October 16, 2018, Portis filed a state petition for writ of habeas corpus for relief from his $500,000.00 bond. *Id.*, Ex. E. On November 13, 2018, a circuit court judge reduced the petitioner's bond to $200,000.00. *Id.*, Ex. F [T. 18:23–29], Ex. G.

1

public defender in the case was no longer responsible for representing the petitioner.[2] *Id.*, Ex. B. On March 28, 2019, Portis was indicted on one count of depraved-heart murder, Miss. Code. Ann. § 97–3–19(1)(b), by a grand jury. *Id.*, Ex. H. On April 11, 2019, the petitioner waived his right to an arraignment and entered a plea of not guilty. *Id.*, Ex. I. He was given a trial start date ("trial date") of June 19, 2019. *Ibid.*

Nevertheless, the petitioner subsequently moved for two trial continuances so that his investigator could "complete the investigation." *Id.*, Ex. K, M. Cumulatively, these continuances pushed the trial date back to January 30, 2020. *Ibid.* On January 31, 2020, defense counsel and the prosecution stipulated that the trial date would be moved to June 2, 2020 pending the availability of the medical examiner, a witness for the prosecution, to testify. *Id.*, Ex. N. The petitioner himself refused to waive his speedy trial rights or sign the stipulation. *Ibid.* Since that time, there has been one continuance due to the coronavirus pandemic, which moved the trial start date from June 2, 2020 to August 11, 2020. *Id.*, Ex. O. The trial start date was then pushed to August 27, 2020 in light of ongoing plea negotiations. Doc. [10], Ex. 1. The trial was then moved to November 3, 2020 because defense counsel had a conflicting matter in chancery court on August 27, 2020. Doc. [11], Ex. 1. Due to defense counsel becoming ill, the trial was continued once more until November 19, 2020. *Id.*, Ex. 2. Most recently, the trial was continued until February 1, 2021 because the petitioner "request[ed] [the] autopsy report." *Id.*, Ex. 3. The petitioner is presently set to go to trial on February 1, 2021. *Ibid.*

---

[2] Portis subsequently filed two petitions for appointment of counsel, on December 12, 2017 and January 30, 2018 respectively. *See id.*, Ex. C–D. Portis' first petition was denied on December 12, 2017. *Id.*, Ex. D. His second petition was granted on January 30, 2018. *Id.*, Ex. C.

2

### III. ARGUMENTS

The respondent makes three arguments in support of his motion to dismiss Portis' habeas petition. Doc. [9], at 5–6. First, the respondent argues that, pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973), Portis' petition can only be construed as seeking to derail a state proceeding. *Ibid.* As such, the respondent continues, the petitioner is required to present, *inter alia*, "special circumstances" to the Court—a burden that he cannot meet. *Id.*, at 7. Second, the respondent argues that even if the Court liberally construes Portis' habeas petition as seeking to require that the State of Mississippi ("State") bring the petitioner to trial, his petition must still be dismissed for failure to show "special circumstances." *Id.*, at 8–9. Third, the respondent argues that the petitioner has failed to exhaust his state remedies. *Id.*, at 10–11.

### IV. ANALYSIS

#### A. Law

Pursuant to Section 2241, a pretrial detainee can file a habeas petition. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). In order to be eligible for pre-trial habeas relief, "a petitioner must be 'in custody' and must have exhausted his available state remedies[.]" *Dickerson v. Louisiana*, 816 F.2d 220, 224–26 (5th Cir. 1987). Section 2241 itself contains the "in custody" requirement. 28 U.S.C. § 2241(c)(3). "The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Braden*, 410 U.S. at 490 (citations omitted). *See also Dickerson*, 816 F.2d at 225. The threshold analysis does not, however, terminate at this juncture. *Brown v. Estelle*, 530 F.2d 1280, 1282–83 (5th Cir. 1976). "[T]here is a distinction

between a petitioner who seeks to 'abort a state proceeding or to disrupt the orderly functioning of state judicial processes' by litigating a speedy trial defense to a prosecution prior to trial, and one who seeks only to enforce the state's obligation to bring him promptly to trial." *Dickerson*, 816 F.2d at 226 (quoting *Brown*, 530 F.2d at 1282–83).

If the petitioner is only seeking to "enforce the state's obligation to bring him promptly to trial[,]" exhaustion of state remedies and being "in custody" are the only two prerequisites before reaching the merits of the Section 2241 petition. *Id.* (citing *Brown*, 530 F.2d at 1283). In such a context, these are the petitioner's only two hurdles at the threshold because enforcing the state's obligation to bring him to trial does not require disrupting a state court proceeding. *Braden*, 410 U.S. at 489. *See also Brown v. Ahern*, 676 F.3d 899, 901–2 (9th Cir. 2012). When reviewing a speedy trial claim for a prompt trial, the Court focuses on the "reasonableness of the delay, that is, whether the state is justified in having failed to commence trial . . . promptly." *Atkins v. Michigan*, 644 F.2d 543, 548 (6th Cir. 1981).

On the other hand, the petitioner must also show "special circumstances" if he seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes[,]" *Braden*, 410 U.S. at 491, because doing so "short circuit[s] the judicial machinery of the state courts[,]" *Brown*, 530 F.2d at 1283 (citing *Braden*, 410 U.S. at 508–9 (Rehnquist, J. dissenting)). The U.S. Supreme Court has never specifically defined what constitutes "special" or "extraordinary" circumstances. *Leachman v. Gonzalez*, No. 4:19–CV–2943, 2020 WL 6152537, at *5 (S.D. Tex. Oct. 20, 2020). Nevertheless, in *Younger v. Harris* and its companion cases, the Supreme Court put forth three, roughly-defined "special circumstances" situations that warrant federal court interference notwithstanding an ongoing state court proceeding. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669

4

(1971). These three situations, applicable in the federal habeas context,[3] *see Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977),[4] are:

> (1) [where] the state-court proceeding was brought in bad faith or to harass the federal p[etitioner]; (2) [where] the federal p[etitioner] seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," . . .[and] (3) where other "extraordinary circumstances" threaten "irreparable loss [that] is both great and immediate."
>
> [*Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018), *cert. denied sub nom., Gates v. Reed*, 139 S.Ct. 1171, 203 L.Ed.2d 198 (2019) (quoting *Younger*, 401 U.S. at 53–54).]

The petitioner bears the burden of showing that an exception applies. *See id.* at 881; *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972). "Mere conclusory allegations…are insufficient to overcome *Younger*—a p[etitioner] seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000).

---

[3] It is unclear whether *Braden* supplanted the initial three-prong inquiry set forth in *Younger*, which requires asking whether "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the p[etitioner] has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In *Braden*, the majority was clearly aware of *Younger*, a case decided only two years earlier, as it cited *Younger* in its opinion. *Braden*, 410 U.S. at 491. Nevertheless, in *Braden*, the Supreme Court appeared to eschew this portion of the *Younger* doctrine in the context of a pretrial Section 2241 habeas petition. *Id.* at 490–92.

Even assuming *arguendo* that the initial three-prong inquiry applies, the petitioner is a pretrial detainee awaiting trial on state charges of depraved-heart murder. Second, the State of Mississippi has an unquestionably strong interest in prosecuting an individual for murder. Finally, the defendant has successfully pursued his rights in state court in this case previously. Nothing before the Court suggests that the defendant would have trouble pursuing those constitutional rights in state court moving forward.

[4] *See also Gibson v. Orleans Par. Sheriff*, 971 F. Supp. 2d 625, 629 (E.D. La. 2013); *Saenz v. Eighth Court of Appeals of Texas*, No. EP–17–CV–357–DCG, 2018 WL 651796, at *3 (W.D. Tex. Jan. 31, 2018); *Wilson v. Travis Cty., Tex.*, No. A–15–CV–175–RP, 2015 WL 1209146, at *2 (W.D. Tex. Mar. 13, 2015).

### B.  APPLICATION

Here, the petitioner is a pretrial detainee awaiting a trial, set to begin on February 1, 2021, on charges of depraved-heart murder. Doc. [1]. The petitioner seeks for the Court to simply "look into his case" because he is innocent of the crime charged and was ordered to be freed by a state court judge in 2018 "on violations." Doc. [1], at 7–8. Liberally construing Portis' habeas petition, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court understands the petitioner to be seeking dismissal of the charges against him because he is innocent, or, in the alternative, to be brought to trial. Doc. [1], at 7–8.[5]

#### i.     Exhaustion of State Remedies

The petitioner has not clearly exhausted his state-court remedies. *Easterly v. Smith*, 30 F.3d 1491, 1491 (5th Cir. 1994) (per curiam) ("By contrast, Easterly alleges that, on one occasion, he moved in state court for a fair and speedy trial, and that the court's decision was 'unknown.' As a result, Easterly has not shown that he placed his constitutional claims squarely before the state court.").[6] In his habeas petition, the petitioner merely alleges that he filed a letter or motion with the Lauderdale County Circuit Court on two occasions. Doc. [1], at 3–4.

---

[5] As noted above, the petitioner claims that he is seeking relief from "violations" of the trial court's apparent order to release him. Doc. [1], at 7. Nevertheless, the relevant hearing transcript shows this assertion to be demonstrably false. Doc. [11], Ex. F, [T. 18:7–19:15]. At the hearing, the judge reduced the petitioner's bond, ordered that the petitioner be brought before a grand jury, and be released if the grand jury finds insufficient evidence to indict him. *Id.*, Ex. F, [T. 18:7–19:15]. The Court cannot provide relief from something did not occur so this argument fails without further discussion.

[6] It is an open question whether pretrial federal habeas petitions arising from Mississippi state court require appeal to the highest court in the state. *Compare Lewis v. Sollie*, No. 3:17–CV–324–CWR–LRA, 2018 WL 1098328, at *1 (S.D. Miss. Feb. 28, 2018) (finding state remedies exhausted after adverse state trial court decision), *with Singletary v. Adam*, No. 1:12–CV–297–HSO–RHW, 2013 WL 588150, at *1 (S.D. Miss. Feb. 13, 2013) (finding failure to present to Mississippi Supreme Court grounds for dismissal on exhaustion grounds). In Mississippi, "the general rule is that th[e] [Mississippi Supreme] Court does not grant interlocutory appeals in a criminal case." *State v. Culp*, 823 So.2d 510, 513 (Miss. 2002). For one, speedy trial interlocutory appeals are not permitted. *See Beckwith v. State*, 615 So.2d 1134, 1144 (Miss. 1992). Therefore, for present purposes alone, the Court assumes *arguendo* that state remedies are exhausted upon a decision by the state trial court.

In one instance, the petitioner claims that he "wrote on the law" to the Lauderdale County Circuit Court about being released by the "first judge."[7] *Ibid.* A transcript from the petitioner's November 2018 pre-indictment hearing indicates that this statement is unsupported. Doc. [9], Ex. F. Additionally, the circuit court docket does not show any such letter or motion being filed in the present case. Doc. [11], Ex. 4. Furthermore, he does not provide a docket number, a filing date, a decision date, or other indication that this letter or motion exists. *Id.*, at 3. Finally, a copy of this alleged letter or motion has not been provided to the Court. As a result, the petitioner has not clearly shown that he has attempted to resolve this issue in state court through his letter or motion. *Easterly*, 30 F.3d at 1491.

In the second instance, the petitioner claims that he told his attorney to file a motion in Lauderdale County Circuit Court about his "actual innocence[.]" Doc. [1], at 4. Like above, the docket sheet for his case does not reflect any such motion being filed. Doc. [11], Ex. 4. Furthermore, the petitioner himself does not provide a specific filing date or even a filing month, or specify that a motion was, in fact, filed. Doc. [1], at 4. Finally, the petitioner does not provide a copy of this motion. As a result, the petitioner has not clearly shown that he has attempted to resolve his issues in state court through this motion. *Easterly*, 30 F.3d at 1491.

For these reasons, the petitioner has not clearly pursued his remedies in the state trial court via motion and the petition should be dismissed for failure to exhaust. *Ibid.*

---

[7] The petitioner appears to be describing the judge who held the November 2018 preindictment hearing. Indeed, he specifically references a colloquy wherein the prosecution claimed that the delay for indicting the petitioner flowed, in part, from a delay in obtaining the final medical autopsy from the medical examiner. *Compare* Doc. [1], at 3–4, *with* Doc. [9], Ex. F (T. 11:20–27). Moving forward, the Court presumes he referenced the state trial judge who held the November 2018 preindictment hearing. In passing, even if the petitioner is referring to Judge Jones, he has presented no evidence to support this assertion and the established record flatly contradicts the assertion. *Compare* Doc. [1], at 3–4, *with* Doc. [9], Ex. A–B.

### C. Alternative Grounds

Nevertheless, the Court addresses the petitioner's arguments in the alternative. As noted above, the petitioner is understood to be seeking to (i) dismiss the charges against him, or, in the alternative, (ii) enforce the state's obligation to bring him to trial.

#### i. Derailment of State Proceedings

First, the petitioner seeks to dismiss the charges against him on the grounds that he is innocent. *See*, *e.g.*, Doc. [1], at 2. As such, the petitioner must show the existence of "special circumstances." *Dickerson*, 816 F.2d at 226. In his habeas petition, Portis puts forth two arguments that may support a finding of innocence: (i) the decedent suffered a "beating death," but his, Portis', hands were not swollen after the murder, and (ii) he brought the decedent to the hospital. Doc. [1], at 7–8. Nevertheless, the petitioner presents no evidence to buoy these or any assertions to meet his burden. *Gates*, 885 F.3d at 881. Additionally, the petitioner does not allege facts that fall into the three narrow "special circumstances" categories. *Ibid.* For these reasons, the petitioner's habeas petition must be dismissed insofar as he alleges "special circumstances."

#### ii. Enforcement of State's Obligation

In the alternative, the petitioner is seeking, *inter alia*, for the Court "to enforce the state's obligation to bring him promptly to trial." *Dickerson*, 816 F.2d at 226 (quoting *Brown*, 530 F.2d at 1282–83). "[T]he speedy trial clause protects two related but distinct interests: the enforcement of the state's duty to provide a prompt trial and the protection of defendants from the prejudice that arises from a state's failure to carry out that duty." *Atkins*, 644 F.2d at 547 (citing *Brown*, 530 F.2d at 1282). *Compare Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), *with Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). The *Barker* speedy-trial

factors are not applicable to the enforcement context. *Atkins*, 644 F.2d at 548. Instead, when reviewing a speedy trial claim for a prompt trial, the Court focuses on the "reasonableness of the delay, that is, whether the state is justified in having failed to commence trial . . . promptly." *Ibid.*

In this case, the speedy trial clock began to tick when the petitioner was arrested on December 6, 2017. *United States v. Loud Hawk*, 474 U.S. 302, 310–11, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). He has remained in prison since that date.[8] On December 7, 2017, the petitioner was given a preliminary hearing. Doc. [9], Ex. A–B. The petitioner's right to counsel attached at this time. *See*, *e.g.*, *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198–99, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008). On January 30, 2018, the petitioner was found indigent and appointed counsel. Doc. [9], Ex. C–D. The petitioner was not, however, indicted until March 28, 2019. *Id.*, Ex. H.

In total, sixteen months of the delay, from the arrest to the present, is attributable to the respondent. To begin with, a substantial portion of the initial yearlong delay pre-indictment was due to the State's investigation into the serious crime that the petitioner allegedly committed. Doc. [9], Ex. F (T. 7:9–9:1). Naturally, reviewing surveillance footage, engaging with potential witnesses, and undertaking various scientific testing takes time. *Id.*, Ex. F (T. 9:22–10:7). On the

---

[8] In passing, the Court notes that the petitioner signed a form appearing to indicate that he waived his speedy trial rights two occasions. Doc. [9], Ex. K, M. Cf. Doc. [9], Ex. N. The standard waiver doctrine applies to waiver of speedy trial rights. *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) (citations omitted). It is well-established that "[f]ar from honoring any statement that might effect a waiver, 'courts indulge every reasonable presumption against waiver....'" *McCamey v. Epps*, 658 F.3d 491, 498 (5th Cir. 2011) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "To rebut this presumption, the State must show that a defendant made a knowing, intelligent, and voluntary waiver of his constitutional rights." *Id.* at 498–99 (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). *See also Maryland v. Shatzer*, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). The defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of waiving such rights. *Brady*, 397 U.S. at 749 (citations omitted).

Presently, the respondent has not sought to invoke this apparent waiver in seeking to dismiss the habeas petition. In turn, the respondent has not brought forth evidence to support the proposition that the petitioner's waiver was knowing, intelligent, and voluntary. Instead, there is simply a form that states summarily that "the Defendant waives the right to a speedy trial." Doc. [9], Ex. K, M. Standing alone, this summary statement and the accompanying signature are insufficient to establish that the petitioner made a knowing and intelligent waiver. *Brady*, 397 U.S. at 749 (citations omitted).

present record, the police investigation was completed on July 9, 2018, at which time the investigative materials were sent to the prosecution. *Id.*, Ex. F (T. 9:2–9). The prosecution required a reasonable amount of time to review the evidence collected and prepare an indictment. By November 13, 2018, the prosecution indicated that it was ready to indict but wanted to receive the decedent's final autopsy report before going to the grand jury. *Id.*, Ex. F. (T. 16:10–21). After the state trial judge considered further reducing the petitioner's bond, the State indicated that it would bring the petitioner before a grand jury once the new grand jury was empaneled. *Id.*, Ex. F. (T. 18:17–19:16). *See also* Miss. Code. Ann. § 13–5–39; Miss. Code. Ann. § 13–5–53. The State indicted the petitioner on March 28, 2019. Doc. [9], Ex. H. The petitioner was given a trial date of June 19, 2019. *Ibid.* The only other delay attributable to the State was the four-month continuance sought due to the medical examiner's unavailability to testify. *Id.*, Ex. N. The remaining delay was due to the petitioner and his representative, *see* Doc. [9], K, M, Doc. [11], Ex. 1–3; *see also Brillon*, 556 U.S. at 90, or neither party, Doc. [9], Ex. I, O.

The delay attributable to the State was reasonable for *Braden* enforcement purposes. *Atkins*, 644 F.2d at 548. The State took steps to investigate a serious crime, depraved-heart murder, and collect evidence. Doc. [9], Ex. F (T. 7:9–9:1). Indeed, multiple detectives were involved in the case. *Id.*, Ex. F (T. 10:9–14). Furthermore, the prosecution needed time to process the information submitted and prepare a proper indictment. Nevertheless, the reasonableness of the delay flows from the nature of the charges, resources committed to the resulting investigation, and the prosecution's active steps to thoroughly prosecute the case. Finally, considering that the January 30, 2020 trial date was a result of the petitioner's sought continuances, for present purposes at least, the four-month delay arising from the medical examiner's unavailability at that time is reasonable. *Id.*, Ex. K, M.

Nevertheless, the Court emphasizes that a long delay arising solely from a government-related administrative delay, i.e. a year to a year-and-one-half backlog at the medical examiner's office or unavailability of such government employee to testify, would be unreasonable when standing alone. *Id.*, Ex. F (T. 11:20–27). The Court does not mean to suggest that all delay is unreasonable. Of course, some delay is always expected. However, the proposition that the State need not move a case forward for a year or year and a half simply because a government institution, Miss. Code. Ann. § 41-61-51, *et seq.*, has a backlog would plainly be unreasonable.

For these reasons, "the state is justified in having failed to commence trial . . . promptly." *Atkins*, 644 F.2d at 548.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that respondent Billy Sollie's motion to dismiss is granted and petitioner Michael D. Portis' Section 2241 habeas petition be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 20th day of January 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE